382 S.E.2d 311

**CAPITOL FUELS, INC.**

v.

**CLARK EQUIPMENT CO. and Wright–Thomas Equipment Co.**

No. 18244.

Supreme Court of Appeals of West Virginia.

May 17, 1989.

Rehearing Denied July 20, 1989.

Barney W. Frazier, Harry F. Bell, Jr., Kay, Casto & Chaney, Charleston, for appellants.

Charles E. Hurt, Charleston, for appellee.

MILLER, Justice:

This is an appeal by Clark Equipment Company and Wright–Thomas Equipment Company, the defendants below, from a jury verdict entered in the Circuit Court of Kanawha County awarding $190,000 in damages to Capitol Fuels, Inc., the plaintiff

below, for the destruction of a 475B Michigan front-end loader.

The plaintiff's theory was that the loader was destroyed by fire when a defect in its design and manufacture caused leaks or ruptures in the hydraulic fluid lines to be sucked by the exhaust fan over the hot surfaces of the engine. The fluid ignited and the machine continued to run, feeding more hydraulic fluid into the fire until the machine burned itself up.

The defendants on appeal seek modification of this Court's decision in *Star Furniture Co. v. Pulaski Furniture Co.*, 171 W.Va. 79, 297 S.E.2d 854 (1982), and to have the jury verdict set aside and the case remanded to the trial court. We do not agree that *Star Furniture* should be modified and, accordingly, the judgment of the trial court is affirmed.

The only issue before this Court on appeal is whether to modify our holding in *Star Furniture* that strict liability may be used where a defective product has been damaged in a sudden calamitous event. The defendants assert that we should adopt the United States Supreme Court's holding in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865, 877 (1986), that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."

*East River* is an admiralty case in which a shipbuilder had contracted with Transamerica Delaval, Inc., to design, manufacture, and supervise the installation of turbines for use as the main propulsion units for four 225,000 ton oil-transporting supertankers to be constructed by the shipbuilder. 476 U.S. at 860, 106 S.Ct. at 2296, 90 L.Ed.2d at 870. After the construction of the ships was completed and the tankers were operating, all four ships experienced malfunctions as a result of manufacturing and design defects in the turbines. Only the turbines themselves were damaged. The admiralty complaint was filed against Delaval under a products liability theory based on negligence.

The Supreme Court determined in *East River* that the failure of a product to function properly is essentially a breach of warranty claim and accordingly held that "no products-liability claim lies in admiralty when the only injury claimed is economic loss." 476 U.S. at 876, 106 S.Ct. at 2305, 90 L.Ed.2d at 880.[1] In support of the decision, the Supreme Court reasoned that "when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like that can be insured. Society need not assume that a customer needs special protection." 476 U.S. at 871–72, 106 S.Ct. at 2302, 90 L.Ed.2d at 877.

The Supreme Court in *East River* recognized that states had evolved several different positions from the most extreme, *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965), which imposed product liability on the manufacturer for any damage to the product, to *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965), which rejected any product liability for damage to the product itself. The Supreme Court also recognized the intermediate position, which we have adopted, in which recovery is permitted for a defect in the product if it is dangerous to users and destroys the product in a sudden calamitous event. 476 U.S. at 869–70, 106 S.Ct. at 2301, 90 L.Ed.2d at 876, citing *Northern Power & Eng'g Corp. v. Cater-*

---

**1.** Some federal courts have followed *East River*. *King v. Hilton–Davis*, 855 F.2d 1047 (3d Cir. 1988); *Aloe Coal Co. v. Clark Equip.*, 816 F.2d 110 (3d Cir.1987); *Aikwright–Boston Manufacturers Mut. Ins. Co. v. Westinghouse Electric Corp.*, 844 F.2d 1174 (5th Cir.1988); *Ingram River Equip., Inc. v. Pott Indus., Inc.*, 816 F.2d 1231 (8th Cir.1987). A few federal courts in diversity cases have recognized the Supreme Court's decision in *East River*, but have followed state law. *Matthewson Corp v. Allied Marine Industries, Inc.*, 827 F.2d 850 (1st Cir.1987); *City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975 (4th Cir.1987); *Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp.*, 813 F.2d 272 (9th Cir. 1987).

*pillar Tractor Co.,* 623 P.2d 324 (Alaska 1981), and *Russell v. Ford Motor Co.,* 281 Or. 587, 575 P.2d 1383 (1978).

 This was the same survey of the law that we made in *Star Furniture* and, with all deference to the view of the United States Supreme Court, its opinions on product liability law are not binding on the states. The *East River* decision does not persuade us that tort liability should not be extended to a manufacturer whose defective product creates a potentially dangerous situation to persons and property and results in the sudden destruction of the product itself. We recognized the primary differences between a products liability claim and a breach of warranty claim in Syllabus Point 3 of *Star Furniture Co. v. Pulaski Furniture Co., supra:*

> "In West Virginia, property damage to defective products which result from a sudden calamitous event is recoverable under a strict liability cause of action. Damages which result merely because of a 'bad bargain' are outside the scope of strict liability."

Clearly, under this law, we would not have accorded recovery in *East River* because the turbines were not damaged as a result of a sudden calamitous event resulting from a defect in the manufacture or design.[2] What appears obvious from *Star Furniture* is that under the "bad bargain" concept, the fact that the product may be flawed or defective, such that it does not meet the purchaser's expectations or is even unusable because of the defect, does not mean that he may recover the value of the product under a strict liability in tort theory. The purchaser's remedy is through the Uniform Commercial Code. *See Kesner v. Lancaster,* 180 W.Va. 607, 378 S.E.2d 649 (1989). In order to recover under *Star Furniture,* the damage to the product must result from a sudden calamitous event attributable to the dangerous defect or design of the product itself.

 In this case, we reaffirm our decision in *Star Furniture.* The front-end loader was not merely an ineffective product which failed to meet the customer's expectations. A defect in the front-end loader caused an abrupt fire which continued to burn until the loader was destroyed. The operator of the loader escaped without injury. The defect in the front-end loader created a potentially dangerous situation and the risk associated with the defect was not one ordinarily contemplated by a purchaser. Clearly, this is the type of property damage resulting "from a sudden calamitous event" which is recoverable under *Star Furniture,* 171 W.Va. at 84, 297 S.E.2d at 859.

Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

---

[2.] We recently affirmed *Star Furniture* in *Basham v. General Shale,* 180 W.Va. 526, 377 S.E.2d 830 (1988), which involved defective bricks on dwellings which severely deteriorated in a six-to ten-year period. While the case turned on a question of the applicable statute of limitations, we indicated that the deterioration would not fall within *Star Furniture's* sudden calamitous event rule. *See also Roxalana Hills, Ltd. v. Masonite Corp.,* 627 F.Supp. 1194 (S.D.W.Va. 1986).