VERMONT PLASTICS, INC., Plaintiff,

v.

BRINE, INC., Defendant and
Third–Party Plaintiff,

v.

NEW ENGLAND PLASTIC SERVICES
CO. and Plastic Materials Company,
Inc., Third–Party Defendants.

BRINE, INC., Counter–Claimant,

v.

VERMONT PLASTICS, INC.,
Counter–Defendant.

VERMONT PLASTICS, INC.,
Third–Party Plaintiff,

v.

NEW ENGLAND PLASTIC SERVICES,
CO. and Plastic Materials Company,
Inc., Third–Party Defendants.

NEW ENGLAND PLASTIC SERVICES
CO., Cross–Claimant,

v.

PLASTIC MATERIALS COMPANY,
INC., Cross–Defendant.

No. 2:91–CV–203.

United States District Court,
D. Vermont.

June 4, 1993.

Gary D. McQuesten, Valsangiacomo, Detora & McQuesten, P.C., Barre, VT, for Vermont Plastics, Inc.

David N. Cole, Hanover, NH, for Brine, Inc.

Paul L. Reiber, and Carolyn Browne Anderson, Abell, Kenlan, Schwiebert & Hall, P.C., S. Stacy Chapman, III, Webber, Costello & Chapman, Ltd., Rutland, VT, and Donald Ball, Ball & Sargent, Worcester, MA, for New England Plastic Services, Co.

Robert S. DiPalma, John T. Sartore, Paul Frank & Collins, P.C., Burlington, VT, for Plastic Materials Company, Inc.

## OPINION AND ORDER

PARKER, Chief Judge.

Defendant and third-party plaintiff, Brine, Inc. ("Brine") brings this third-party action against third-party defendants Plastic Materials Company, Inc. ("PMC") and New England Plastic Services ("New England"), alleging negligence, negligent misrepresentation, and breach of express and implied warranties. Both third-party defendants (collectively, "Defendants") move to dismiss the negligence claims, for judgment on the pleadings with respect to the express warranty claim, and for summary judgment on the implied warranty claim. Brine opposes these motions. The complaint against both Defendants and the various motions and supporting memoranda are similar and are treated together. Defendants' motions on the negligence, negligent misrepresentation, and the implied warranty claims are granted. Defendants' motion with respect to the express warranty claim is denied pursuant to Fed. R.Civ.P. 56(f).

## BACKGROUND

The undisputed facts for purposes of the pending motions are as follows.[1] Brine, the third-party plaintiff, is a New Hampshire corporation which manufactures sporting goods. The original plaintiff in this action, Vermont Plastics, Inc. ("Vermont Plastics"),

---

1. The Defendants concede for purposes of these motions only that Brine's allegations and facts in an affidavit submitted by Brine in response to Defendants' motions are true. This background is drawn from those sources.

a Vermont corporation with its principal place of business in Vermont, is a custom plastic injection molding company. Third-party defendant PMC is a compounder of plastic materials; its principal place of business is in Delaware. The other third-party defendant, New England, has its principal place of business in Massachusetts and is a distributor of plastic materials.

Vermont Plastics supplied plastic lacrosse stick heads to Brine. Brine specified that only Dupont Zytel ST–801 Super–Tough nylon resin was to be used in the manufacture of the lacrosse stick heads, and Vermont Plastics originally used this nylon. In the fall of 1987, Vermont Plastics was having problems obtaining ST–801 in the colors needed for the lacrosse stick heads. Vermont Plastics contacted New England in an attempt to secure a source of nylon. New England contacted PMC and PMC supplied the nylon through New England to Vermont Plastics. In certain instances, PMC shipped the nylon directly to Vermont Plastics. PMC did not use ST–801 nylon. Instead, it used a nylon which the parties refer to as "6608."

PMC and New England had no direct contact with Brine during this period. It is undisputed that neither PMC nor New England entered into a formal contract with Brine. The parties, however, dispute the nature of the contacts between PMC and Vermont Plastics, and Brine claims that discovery is not complete regarding the nature and extent of contacts between Vermont Plastics, New England, and PMC.

PMC represented to New England that 6608 could be used instead of ST–801 with no adverse effects. New England made similar representations to Vermont Plastics. None of the parties informed Brine of the change in the nylon resin, and Brine was unaware that the 6608 nylon was being used instead of the ST–801. Because the nylon used to make the heads was switched, Brine experienced an increased rate of breakage in the lacrosse stick heads.[2] When Brine realized that the breakage rate of the stick heads was increasing, it contacted Vermont Plastics about the problem, but Vermont Plastics in-

formed Brine that there were no changes in its manufacturing process that could lead to the increased breakage rate.

Due to the increased breakage rate, Brine had to replace over 38,000 lacrosse sticks which had broken in play because of the heads' defective quality, and Brine has a number of heads in its inventory which it will not sell as a result. Brine has also suffered declining sales in its lacrosse stick business as a result of lost consumer confidence due to the increased breakage rate. A lacrosse stick that is more likely to break during play presents an increased risk of injury to the players.

Vermont Plastics originally brought this action in Washington County Superior Court against Brine attempting to recover compensatory and punitive damages, which Vermont Plastics alleges it suffered as a result of one particular financial transaction (not material to the pending motions) with Brine. Brine removed to this Court claiming diversity of citizenship and an amount in controversy exceeding $50,000 exclusive of costs and interest. Brine then counterclaimed under Fed. R.Civ.P. 13(a), alleging various claims against Vermont Plastics. Brine later added New England and PMC as third-party defendants. The claims against both are similar and based on negligence, negligent misrepresentation, and a breach of express and implied warranty. Both New England and PMC filed motions to dismiss the negligence claim, motions to dismiss the implied warranty claim on the pleadings, and a motion for summary judgment on the express warranty claim.

## DISCUSSION

### I. Standard of Review

Because Brine has submitted an undisputed affidavit in opposition to the Defendants' various motions and that affidavit is somewhat relevant to all the motions, it is proper to treat the various motions as motions for summary judgment. *See* Fed.R.Civ.P. 12(b) ("[i]f on a motion ... to dismiss for failure of

---

**2.** According to Brine, the breakage rate increased from about 4% when the ST–801 nylon was used to over 18% when the 6608 plastic was used.

the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as a motion for summary judgment"); Fed. R.Civ.P. 12(c) (same but as to motions for judgment on the pleadings).

Summary judgment is proper when "there is no genuine issue as to any material fact, and [when] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Payne v. United States*, 980 F.2d 148, 150 (2d Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "All facts must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir.1993). A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmoving party's favor. *See Litton Indus., Inc v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742, 746 (2d Cir.1992) (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510).

### II. Brine's Negligence Claims

 In Counts II & III, Brine alleges negligence against both New England and PMC. Defendants have moved to dismiss these counts. They claim that Brine's harm is purely economic—that is, there is no personal injury nor other property damage to Brine—and that such damages are not recoverable under a negligence theory. In other words, Defendants argue that Brine cannot recover in negligence because Brine's only damages are to the lacrosse stick heads themselves and consequential business losses arising therefrom, and that such damages are not compensable in tort. Brine does not dispute that it seeks to recover solely for economic harm, but argues that such dam-

ages are recoverable in negligence under Vermont law. The parties agree that there is no Vermont Supreme Court opinion deciding this issue. Naturally, each party urges this Court to predict Vermont law [3] favorable to their respective desired outcomes.

Perhaps the most persuasive authority in this area is a relatively recent Supreme Court decision deciding admiralty law. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In that case, turbines purchased by the plaintiffs were damaged due to manufacturing and design defects in the turbines themselves; there was no harm except to the turbines. The Supreme Court determined that failure of a product to perform as expected is essentially a breach of warranty claim and accordingly held that "no products-liability claim lies in admiralty when the only injury claimed is economic loss." 476 U.S. at 876, 106 S.Ct. at 2304.

The *East River* Court delineated three major viewpoints adopted by various courts on this issue. The majority view, represented by *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), would deny recovery in all cases based on strict products liability and negligence where the claim is to recover solely for economic loss. The minority approach, which was first articulated by the New Jersey Supreme Court in *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305, 312–13 (1965), holds that in cases grounded in tort the manufacturer's duty to make a non-defective product extends to injury to the product itself.

Situated between these two views fall a number of cases that attempt to define the line between tort and contract, not by considering the type of damages sought, but rather by "analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose." *Pennsyl-*

---

**3.** The parties seem to agree that under the conflict of law rules, Vermont law applies to Brine's third-party action. When "the parties do not say that the forum state's conflict-of-law rules require the application of another state's substantive law, ... the forum state's substantive law must be applied." *In re Iowa R.R. Co.*, 840 F.2d 535, 543 (7th Cir.1988). Additionally, based on the present record, this Court is satisfied that Vermont law should apply as to Brine's contract claims under the choice of law standard articulated in *Pioneer Credit Corp. v. Carden*, 127 Vt. 229, 233, 245 A.2d 891, 893 (1968), and that Vermont law should apply to Brine's tort claims under the choice of law standard that this court predicted that the Vermont Supreme Court would adopt in a tort action in *Le Blanc v. Stuart*, 342 F.Supp. 773, 774 (D.Vt.1972).

*vania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3d Cir.1981), *overruled by Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 116–20 (3d Cir.1987). The purpose of such an analysis is to place the risk of loss (including purely economic loss) created by a *hazardous* product on the manufacturer, and thus, distinguish between those cases where the product's performance merely fails to live up to the buyer's expectations (breach of contract) and those where the product creates an unreasonable risk of personal injury or property damage (tort). *Cloud v. Kit Mfg. Co.*, 563 P.2d 248 (Alaska 1977). In other words, this view differentiates between "the disappointed users . . . and the endangered ones." *Russell v. Ford Motor Co.*, 281 Or. 587, 575 P.2d 1383, 1387 (1978).

The *Seely* court, in the leading case representing the majority view, based its conclusion that economic damages were not available under strict products liability theory on the following reasoning:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary. . . . [The manufacturer] can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury. . . . He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.

*Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 23, 403 P.2d 145, 151 (1965).[4]

The Supreme Court in *East River* echoed the *Seely* court's reasoning:

4. Since *Seely,* most state courts have decided that purely economic losses cannot be recovered in tort. *See Spring Motors Distribs., Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660, 669 (1985) (citing several cases adopting the majority view).

> The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune" and one the person is not prepared to meet. [citation omitted]. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or . . . experiences increased costs in performing a service.

476 U.S. at 871, 106 S.Ct. at 2302.

The Court was also concerned that contract law not "drown in a sea of tort" and cited four reasons why the proper path to recovery is in contract or warranty. First, damage to a product itself is most naturally understood as a warranty claim in that the product has simply failed to meet the customer's expectations. Second, in cases of purely economic harm only, contract law is well suited to commercial controversies because the parties may set the terms of their own agreement. Third, warranty law already protects the purchaser by allowing it to obtain the benefit of its bargain. And finally, warranty law has a built-in limitation on liability, whereas tort actions could subject the manufacturer to infinite damages. *Id.* at 872–74, 106 S.Ct. at 2302–04.

As to this last reason, the Court was concerned that in products-liability law where there is a duty to the public generally, foreseeability alone, as provided in tort law, could subject a manufacturer to potentially infinite damages. *Id.* at 874, 106 S.Ct. at 2304. The Court reasoned that manufacturers would have difficulty anticipating the expectations of persons downstream who may encounter its product. In the warranty action, where the loss is purely economic, on the other hand, there is the additional limitation of privity, which is still generally required for such claims in a commercial setting. *Id.*

Many courts have cited Justice Traynor's reasoning in *Seely* as persuasive authority. *See, e.g., Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 751, 435 N.E.2d 443, 448 (1982).

In a similar vein, many state courts have expressed concern that allowing for purely economic recovery in tort would undermine the legislative scheme of the Uniform Commercial Code:

> [T]he legislatures of nearly every state in the Union have adopted the UCC which carefully and painstakingly sets forth the rights between parties in a sales transaction with regard to economic loss. This Court, in the common law evolution of the tort law of this state, must recognize the legislature's action in this area of commercial law and should accommodate when possible the evolution of tort law with the principles laid down in the UCC.

*Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784, 793 (1978) (footnote omitted). Several of the UCC's provisions in Vermont, for example, could be avoided by a plaintiff proceeding under a tort theory instead of the UCC. The framework provided by the UCC as adopted by Vermont includes a statute of frauds (9A V.S.A. § 1–206), rules on disclaimers (9A V.S.A. § 2–316), notice requirements (9A V.S.A. § 2–607), limitations upon a manufacturer's liability (9A V.S.A. §§ 2–718, 2–719), and a statute of limitations (9A V.S.A. § 2–725). Although several courts have held that these rules may frustrate just compensation for personal injury, they function well in a commercial setting. *See Clark*, 581 P.2d at 792–93.

The minority viewpoint, on the other hand, has focused on a different set of policy concerns. The leading case representing the minority view is *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965). In *Santor*, a carpet manufacturer sold a defective carpet to a consumer through its wholly-owned distributor, and the New Jersey Supreme Court found that the consumer could recover against the manufacturer, even through there was no privity between the parties and the consumer suffered only economic losses. The court stated that the purpose of the strict liability action was to shift the risk of loss so that it is borne by "the makers of the products who put them in the channels of trade, rather than the injured or damaged persons who ordinarily are powerless to protect themselves." *Santor*, 207 A.2d at 312.[5]

Even the New Jersey Supreme Court, however, refused to extend the *Santor* holding in a case where a *commercial* buyer sought to recover purely economic damages. *Spring Motors*, 489 A.2d at 660. The court reasoned that a commercial buyer was "at least as well situated as the defendants to assess the impact of economic loss." *Id.*, 489 A.2d at 671. The court also noted that a commercial buyer does not suffer the same imbalance in bargaining power as an ordinary consumer.[6] *Id.*

Thus, this Court need not predict the more closely divided question of whether the ultimate consumer can recover for purely economic losses. The issue to decide, rather, is whether the Vermont Supreme Court would permit recovery of purely economic damages in a products-liability case when the plaintiff is a commercial buyer. Based on review of case law from other jurisdictions that have decided the issue, this Court predicts that the Vermont Supreme Court would find the reasoning of the recent *East River* and *Spring Motor* opinions persuasive and bar recovery of purely economic losses on the basis of a negligence theory, at least as to commercial buyers.[7]

---

**5.** Only a few states have followed *Santor*. See cases collected in *Jones & Laughlin Steel Corp. v. Johns–Manville Sales Corp.*, 626 F.2d 280, 287 n. 13 (3d Cir.1980).

**6.** Several other courts have refused to allow tort recovery for economic losses in a commercial transaction. *Laurens Elec. Coop., Inc. v. Altec Indus., Inc.*, 889 F.2d 1323 (4th Cir.1989) (applying South Carolina law); *East Miss. Elec. Power Ass'n v. Porcelain Products Co.*, 729 F.Supp. 512 (S.D.Miss.1990) (applying Mississippi law); *Iowa Elec. Light & Power Co. v. Allis–Chalmers Mfg. Co*, 360 F.Supp. 25 (S.D.Iowa 1973) (applying Iowa law); *Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 108 N.M. 539, 775 P.2d 741 (Ct.App.1989); *Cowell, Inc. v. Ford Motor Co.*, 1990 WL 10970, 1990 Ohio App. LEXIS 426 (Ohio Ct.App.1990); *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308 (Tex.1978).

**7.** In doing so, this Court rejects Brine's argument that several Vermont Supreme Court cases indicate that Vermont would follow the minority view on this issue. The Vermont cases cited by Brine are easily distinguishable. One class of cases cited by Brine simply indicates that the ultimate consumer may recover for personal

Brine also argues that in this case Vermont would adopt the intermediate view, outlined above, which permits tort recovery for purely economic damages when the defective product creates a potentially dangerous situation to a person or other property, and the loss occurs as a proximate result of that danger and under dangerous circumstances. *See, e.g., Northern Power & Eng'g Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324, 329 (Alaska 1981); *see also Capitol Fuels, Inc. v. Clark Equip. Co.*, 181 W.Va. 258, 382 S.E.2d 311 (1989) (requiring that the economic loss occur in a "sudden and calamitous event"). The uncontroverted affidavit submitted by Brine indicates that an opposing player could be severely or fatally injured if struck by a lacrosse stick head, which then broke on contact. The affidavit also states that the breakage rate was much higher in the heads manufactured with the 6608 plastic than in the heads manufactured by the ST–801 plastic, and that the heads returned to Brine apparently broke during play. Based on these facts, Brine argues that the 6608 plastic is inherently dangerous and that Vermont would adopt the intermediate view as stated above.

The policies stressed in intermediate cases focus on the manner in which products are mass marketed in our society. One such case argues that the intermediate view should deter manufacturers from marketing hazardous or dangerous products. *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wash.2d 847, 774 P.2d 1199 (1989). Another stresses that the policy underlying products liability is that the manufacturer should bear the risk of unsafe products it markets, rather than the injured parties that are unable to protect themselves. *Cloud*, 563 P.2d at 250. In *Cloud*, the court also stressed that the manufacturer's responsibility for manufacturing a dangerous product should not depend on the fortuitous fact of whether or not a person escaped injury. *Id.* at 250–51. The underlying policy of these cases is that tort law should "impose a duty on manufacturers to produce safe items, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself." *Pennsylvania Glass*, 652 F.2d at 1172–73.

The Court in *East River* also discussed and rejected the intermediate view. 476 U.S. at 869–70, 106 S.Ct. at 2301–02. The Court reasoned that the intermediate approach was "too indeterminate to enable manufacturers ... to structure their business behavior." *Id.* at 870, 106 S.Ct. at 2301–02.[8] In addition,

*physical* injury from a seller or merchant in a products liability context. *Quality Market v. Champlain Valley Fruit Co.*, 127 Vt. 562, 255 A.2d 183 (1969); *O'Brien v. Comstock Foods, Inc.*, 125 Vt. 158, 212 A.2d 69 (1965); *Wasik v. Borg*, 423 F.2d 44 (2d Cir.1970) (predicting Vermont law); *Deveny v. Rheem Mfg. Co.*, 319 F.2d 124 (2d Cir.1963) (predicting Vermont law). These cases are obviously not predictive of the court's view in a case where there is no personal injury or property damage. The other two cases cited by Brine, *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 572 A.2d 921 (1990) and *Hilder v. St. Peter*, 144 Vt. 150, 478 A.2d 202 (1984), are also distinguishable because in both cases the consumer pled a contract theory, which is the traditional avenue of recovery for economic loss.

In addition, this Court does not intend to ignore or undermine third party recovery in negligence for purely economic losses suffered as a result of reliance upon negligently rendered professional services. *E.g., Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425 (1922) (public weigher of beans held liable to the buyer for an erroneous weight statement because the weigher knew buyer would rely on the weight statement); *see also Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962) (attorney whose negligence caused intended beneficiary of a will to be deprived of benefits of the will was liable to beneficiary); *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969) (surveyor whose negligence resulted in error in depicting boundary of lot held liable to remote purchaser). This is a special class of cases involving professional services to certain particularly foreseeable classes of economically injured persons. For further discussion of this particular cause of action see *infra* Part III.

8. A review of the case law in states following the intermediate view shows that the courts in these states have had difficulty developing and applying a standard which will lead to consistent results. See cases collected in Strict Products Liability: Recovery for Damage to Product Alone, 72 A.L.R.4th 12 at §§ 5, 6. There is also some conflict between the courts of these states on the proper standard to apply in such cases. *Compare Northern Power & Eng'g Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324, 329 *with Capitol Fuels, Inc. v. Clark Equip. Co.*, 181 W.Va. 258, 382 S.E.2d 311, 313 (1989).

the Court was not persuaded by the logic of these decisions:

> Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law.

*Id.* at 870, 106 S.Ct. at 2302.

After *East River*, the Third Circuit Court of Appeals held that even though it had earlier predicted that Pennsylvania would follow an intermediate approach, Pennsylvania would be persuaded by the strength of the reasoning in *East River* and would not permit recovery of purely economic loss in tort. *Aloe Coal*, 816 F.2d at 116–19. A federal district court has predicted that California, Illinois, and North Carolina would do likewise. *PPG Indus., Inc. v. Sundstrand Corp.*, 681 F.Supp. 287 (W.D.Pa.1988). On the other hand, some state courts which have revisited the issue have refused to overrule their earlier opinions. *Washington Water Power*, 774 P.2d at 1209; *Capitol Fuels*, 382 S.E.2d at 313.

I am convinced that Vermont, deciding this issue for the first time, would find the reasoning of *East River* and *Seely* persuasive and would not permit a tort claim to proceed where purely economic damages have been suffered by a commercial entity, even if the product was destroyed in a dangerous occurrence. This is especially true where all the parties in this action are commercial entities and each should be in the best position to protect its economic interests if for some reason it does not receive the benefits it has bargained for. Defendants' motions as to Counts II and III are granted.

### III. Brine's Negligent Misrepresentation Claims

In Counts IV and V of its complaint,[9] Brine claims that Defendants "knew or should have known that the substitution of 6608 for Dupont Zytel ST–801 could affect the durability of Brine's lacrosse stick head[s], but nevertheless recommended to Vermont Plastics that it purchase and use 6608 in place of Dupont Zytel ST–801" and that this amounted to negligent misrepresentation. Defendants again move to dismiss on the theory that purely economic damages are not available under a negligence theory. In fact, the parties do not at all distinguish between the negligence and the negligent misrepresentation counts. Case law from Vermont and other jurisdictions indicates that the two theories of recovery require separate treatment.

Vermont has recently relied upon the Restatement (Second) of Torts § 552(1) in interpreting the tort of negligent misrepresentation. *Silva v. Stevens*, 156 Vt. 94, 108, 589 A.2d 852, 860 (1991). According to the Restatement, negligent misrepresentation occurs when

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977).

■ Plaintiff's argument that purely economic damages are not recoverable for negligent misrepresentation is rejected. First, as indicated above, the Restatement allows for any pecuniary loss suffered by a party relying on the misrepresentation. Second, in *Kramer v. Chabot*, 152 Vt. 53, 564 A.2d 292 (1989), the Vermont Supreme Court allowed a plaintiff to recover for purely economic damages under a negligent misrepresentation theory. The court allowed the plaintiff to recover the benefit of her bargain for losses that she suffered in purchasing a house which was worth considerably less money than represented to her by an inde-

---

**9.** The fifth count of Brine's complaint was erroneously labeled as Count IV but is referred to as Count V in this opinion.

pendent appraiser. *Id.* at 58, 564 A.2d at 294–95. Therefore, under the Restatement and under Vermont law, a plaintiff can recover contract-type damages—or in other words, purely economic damages—for the tort of negligent misrepresentation.[10]

Nevertheless, "[w]hen the harm that is caused is only pecuniary loss, the courts have found it necessary to adopt a more restricted rule of liability, because of the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it." Restatement (Second) of Torts § 552 cmt. a. The liability as stated in section 552 is therefore limited to losses suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends.

*Id.* at § 552.

Vermont has followed these limitations and has required that both of these limitations be met in order to state a claim of negligent misrepresentation. *See Behn v. Northeast Appraisal Co.*, 145 Vt. 101, 105, 483 A.2d 604, 607 (1984). Here, however, Brine has not alleged that it relied on the information New England and PMC supplied to Vermont Plastics. In fact, the allegations indicate that Brine was not even aware of the misrepresentations. It therefore could not have relied upon them to its detriment. Summary judgment is therefore appropriate.

IV. Brine's Implied Warranty Claims

Defendants move for summary judgment as to Brine's implied warranty claims on the ground that there is no con-

tractual privity between Brine and the Defendants. Brine concedes that there is no contractual privity between the parties, but that under Vermont's version of the Uniform Commercial Code, privity is not required.

Defendants concede that the concept of privity has been discarded as a requirement in many circumstances under the UCC, but contend that privity is still required in warranty actions involving purely economic damages in a commercial setting. In other words, although privity "is a doctrine in hasty retreat[,] its current vitality is largely in cases in which plaintiffs seek recompense for economic loss." James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–7, at 541 (3d ed. 1988).

Vermont's version of the UCC leaves the issue open as to whether privity is required between a purchaser and a manufacturer when purely economic damages are at stake. Under 9A V.S.A. § 2–318, a seller's warranty extends to natural persons who are injured in person by a breach of warranty; privity between the seller and injured person is not required. 9A V.S.A. § 2–318 (1966). The Defendants argue that because this section applies only to natural persons, Brine, a corporation, may not recover. To the contrary, the drafters of the UCC expressly rejected such an interpretation of § 2–318. In a comment following § 2–318, the drafters stated, "[b]eyond [the express language of this section], the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." 9A V.S.A. § 2–318 cmt. 3; *see also* 9A V.S.A. § 2–313 cmt. 2.

As in other jurisdictions, Vermont case law does evince a trend toward dispensing with the privity requirement. In a 1965 decision, the Vermont Supreme Court held that privity is not required when the ultimate consumer

---

10. When a plaintiff chooses to proceed in equity under a constructive fraud claim, which has many of the same elements as a negligent misrepresentation claim, the plaintiff is limited to recision, an equitable remedy, and may not recover damages. *Hardwick–Morrison Co. v. Albertsson*, 605 A.2d 529, 532 (1992) (citing *Union*

*Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980)). Because the court has made different damages available under the negligent misrepresentation theory and the constructive fraud theory, the constructive fraud cases offer no guidance on this issue.

is injured by a manufacturer's product. *O'Brien v. Comstock Foods, Inc.*, 125 Vt. 158, 212 A.2d 69 (1965). In 1970, the Second Circuit Court of Appeals predicted that Vermont would allow for recovery of property damage between an ultimate consumer and a manufacturer, even though there was no privity in that case. *Wasik v. Borg* 423 F.2d 44, 49 (2d Cir.1970). Finally, in 1978, the Vermont Supreme Court held lack of privity between a manufacturer and the ultimate consumer does not bar the consumer's action in recovering on an express warranty for "the purchase price along with incidental and consequential damages and interest." *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 924 (1990).[11]

In contrast to these cases are those that indicate that privity may still be required in some circumstances. In *Hall v. Miller*, 143 Vt. 135, 145, 465 A.2d 222, 227–28 (1983), the court held that a commercial buyer could recover lost profits under the UCC where there was privity of contract between the buyer and the seller. In *Aube v. O'Brien*, 140 Vt. 1, 433 A.2d 298 (1981), the court was faced with determining whether a general statute of limitations applied or the statute of limitations provided by the UCC. The court held that plaintiff's cause of action was "the classic type of commercial transaction which was envisioned by the legislature when it adopted Article 2 of the [UCC]. There is privity of contract." *Id.* at 4, 433 A.2d at 300. In addition, both parties to the contract were " 'merchants' within the meaning of 9A V.S.A. § 2–104(1)." *Id.* In *Aube*, the court distinguished *Kinney v. Goodyear Tire & Rubber Co.*, 134 Vt. 571, 367 A.2d 677 (1976), which did not apply the UCC statute of limitations because there was an absence of contractual privity between the parties. *Aube*, 140 Vt. at 5, 433 A.2d at 300.

In sum, the Vermont Supreme Court has dispensed with privity when personal injury, property damage, or an express warranty made directly from the defendant to the plaintiff is present. Other cases can be read to retain the privity requirement under an implied warranty theory when there is no injury to person or property, but these cases do not directly address the issue, and they do not address subsequent developments in other states.

The national trend is also mixed. Although it appears that a majority of the states still require privity to state a claim under the UCC on the basis of an implied warranty,[12] "a growing number of courts now allow non-privity plaintiffs to recover for . . . economic loss."[13] James S. White & Robert S. Summers, *Uniform Commercial Code* § 11–5, at 537 (1988).

The courts that have required privity under the UCC when a plaintiff attempts to recover for economic damages have stressed the traditional contract rights of the parties. One court has reasoned, "to permit recovery for economic loss would impair traditional rights of parties to make their own contract

---

11. The opinion in *Gochey*, holding that a consumer may recover under an express warranty from the manufacturer even when there is no privity, does not support an expansion of the holding to an implied warranty case. This is so because in *Gochey* the court dispensed with the privity requirement because the manufacturer expressly warranted its goods to the consumer and in effect created "a direct contract with the ultimate buyer." *Gochey*, 153 Vt. at 613, 572 A.2d at 924. Indeed, such language could be read to indicate that the court was concerned that some relationship akin to contractual privity be present between the buyer and the manufacturer for the buyer to recover economic damages. Expanding Gochey's holding to govern implied warranty cases would be a treacherous jurisprudential exercise.

12. For cases still requiring privity see White & Summers, *supra*, § 11–5, at 537 n. 5. For more recent cases see *Mt. Holly Ski Area v. U.S. Elec. Motors*, 666 F.Supp. 115 (E.D.Mich.1987) (predicting Michigan law); *State Farm Fire & Casualty Co. v. J.B. Plastics, Inc.*, 505 So.2d 1223 (Ala.1987); *Cedars of Lebanon Hospital v. European X–Ray Distribs. of America, Inc.*, 444 So.2d 1068 (Fla.Dist.Ct.App.1984); *Board of Educ. v. A, C & S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989); *Szajna v. General Motors Corp.*, 115 Ill.2d 294, 104 Ill.Dec. 898, 503 N.E.2d 760 (1986); *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 675 P.2d 887 (1984); *Lawyers Coop. Pub. Co. v. Muething*, 65 Ohio St.3d 273, 603 N.E.2d 969 (1992).

13. For cases that have abandoned the privity requirement in implied warranty claims for economic loss see White & Summers, *supra*, § 11–5, at 537 nn. 6–7.

and discard the principle that a buyer should pick his seller with care and recover any economic loss from that seller." *Hole v. General Motors Corp.,* 83 A.D.2d 715, 442 N.Y.S.2d 638, 640 (1981). Other courts have noted that if there were no privity requirement under the UCC for recovery of economic damages, then a host of uncertainties arise, especially for the remote manufacturer. *Professional Lens Plan, Inc. v. Polaris Leasing Corp.,* 234 Kan. 742, 675 P.2d 887, 898 (1984); *see also* White & Summers, *supra,* § 11–5, at 538. For example, a remote manufacturer would have difficulty excluding or modifying warranties under 9A V.S.A. § 2–316, because the remote manufacturer does not know for whom it must exclude or modify its warranties. *Professional Lens,* 675 P.2d at 898.

Based upon a review of the above authorities, I hold that in order for a plaintiff to recover economic losses on a breach of implied warranty theory under Vermont law, privity of contract must exist between the plaintiff and the defendants where, as here, all parties are sophisticated business entities. There are public policy reasons for differentiating between a case where an individual is personally injured and where a business suffers only economic losses. Where the individual suffers physical injury from a defective product, the ultimate wrongdoer is in the best position to spread the costs of liability. Where a business entity suffers only economic losses, on the other hand, the recourse should be against the other contracting party rather than another party further along the distribution chain. In these cases, the parties to the sales transaction are in the best position to determine the economic risk the transaction presents and then to allocate the risk accordingly.

This is particularly true where both the buyer and the seller are sophisticated business entities that regularly deal with the product in question. In such a case, the buyer should attempt to proceed directly against the seller. Thus, if Brine is to recover under an implied warranty theory, it must recover from Vermont Plastics, if at all. Defendants' motions for summary judgment as to the implied warranty claims are therefore granted.

## V. ·Brine's Express Warranty Claims

 Brine has also stated a claim of express warranty against both Defendants. Defendants again argue that privity is required in order for a party to recover on an express warranty claim. Brine contends that Vermont Plastics may be considered an agent of either PMC or New England for the purpose of representing product quality or that Vermont Plastics is an agent of Brine for the purpose of receiving such representations. Because PMC and New England both made representations to Vermont Plastics, and because of the agency relationship, Brine argues that, in effect, express warranties have been made directly to Brine. Brine concedes, however, that at present there is not enough summary judgment evidence to show that an agency relationship exists between any of the parties, and therefore requests more time to develop such facts in discovery pursuant to Fed.R.Civ.P. 56(f).

Rule 56(f) states:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

The Rule requires the proponent of the Rule 56(f) motion to file an affidavit explaining the following: 1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; 2) how those facts are reasonably expected to create a genuine issue of material fact; 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985). Brine has submitted an affidavit by William H. Brine, Executive Vice President of Brine, in support of its Rule 56(f) motion. Requirements one,

three, and four have been satisfied because the affidavit states the facts to be obtained and how they are to be obtained, the efforts made by Brine's attorney to obtain the facts, and why the efforts were initially unsuccessful. *See* Brine Aff. ¶¶ 6, 7, 8.

Once the outstanding discovery is complete, Brine may be able to show that a genuine issue of material fact exists and Brine has therefore met the second requirement from above. This is so because if Brine is successful in showing an agency relationship, then Brine may maintain an action for breach of an express warranty under Vermont law. In *Costa v. Volkswagen of America,* 150 Vt. 213, 214–15 n. 1, 551 A.2d 1196, 1197 n. 1 (1988), the court held an agency relationship between a remote seller and the seller would be sufficient to overcome any lack of privity claim because the remote seller would simply be recognized as the "seller" for purposes of applying the Code's warranty provisions.[14] This was so because " '[o]ne of the incidents of the status of principal and agent is the power of the agent to subject his principal to liability for an act done in furtherance of the agency.' " *Id.* (quoting *Young v. Lamson,* 121 Vt. 474, 476, 160 A.2d 873, 875 (1960)). Therefore, if Brine could show materially disputed facts on the question of whether an agency relationship existed between Vermont Plastics and the Defendants in this case, or Brine and Vermont Plastics, then granting summary judgment would be improper as to Brine's express warranty claim.[15]

Accordingly, Brine's Rule 56(f) motion is granted, and defendants summary judgment motion is denied. When discovery is complete on the issue of whether or not there is an agency between the parties, Defendants may again move for summary judgment.

14. The reference to *Costa* in *Gochey,* 153 Vt. at 613, 572 A.2d at 925, cannot be read as overruling *Costa* on this point.

15. In so holding, this Court does not imply that absent privity a party must be able to show agency to recover on an express warranty. The Vermont Supreme Court has held that the ultimate consumer may recover in an express warranty action under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2310(d)(2), where there is

## CONCLUSION

Defendants' motions for summary judgment (Papers # 43 and # 52 in Court's docket) as to Brine's negligence claims under Counts II and III, Brine's negligent misrepresentation claim under Counts IV and V, and Brine's implied warranty claim under Count I are GRANTED. Defendants' motions for summary judgment as to Brine's express warranty claim under Count I are DENIED, and Brine's Rule 56(f) motion is GRANTED.

no privity, but where the manufacturer expressly warranted its goods to the consumer. *Gochey,* 153 Vt. at 613, 572 A.2d at 924. In this type of case, the manufacturer is said to create a direct contract with the ultimate buyer and privity is unnecessary. *Id.* Nevertheless, Brine does not allege that either of the Defendants have made express warranties directly to Brine, which Brine then relied on in purchasing the 6608 nylon. Brine instead has relied on an agency argument.