**CORSICA COOPERATIVE ASSOCIATION,
Plaintiff,**

v.

**BEHLEN MANUFACTURING COMPANY, INC.,
Defendant.**

**No. Civil 96–4078.**

United States District Court, D. South Dakota, Southern Division.

May 28, 1997.

Mark V. Meierhenry, Danforth, Meierhenry & Meierhenry, Sioux Falls, SD, Kevin P. Caraher, John J. Malm, Clausen Miller, P.C., Chicago, IL, for Plaintiff.

Michael L. Luce, Melissa C. Hinton, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for Defendant.

**JUDGMENT**

PIERSOL, District Judge.

## MEMORANDUM OPINION AND ORDER

Plaintiff Corsica Cooperative Association ("Corsica") brings this suit for damages against Behlen Manufacturing Company, Inc. ("Behlen"). Before the Court for ruling is Behlen's Motion for Summary Judgment. For the reasons discussed below, the Court grants Behlen's motion in part and denies the motion in part.

### *Background*

Corsica is a South Dakota corporation with its principal place of business in Corsica, South Dakota. It determined that it was in need of additional capacity to store corn and decided to erect a building which could be

used for other purposes, as well. The ultimate collapse of this building forms the subject of this dispute.

Corsica contacted a local contractor, SBC Construction, Inc. and an agreement was entered into for the construction of a grain storage building. SBC then sought bids from manufacturers including Behlen for the building components. The building was completed no later than December 2, 1986. There was some repair required in the end walls of the building shortly after it was completed when the weight of the grain caused the end walls to buckle. Behlen prepared and installed a repair kit to reinforce these walls. These repairs were completed by September of 1988.

On October 27, 1994, the building suddenly collapsed, damaging the building, corn stored inside and two vehicles parked nearby. Corsica seeks recovery for damages caused by the collapse in this action commenced in April, 1996. Behlen is a Nebraska corporation with its principal place of business in Columbus, Nebraska and the matter is before this Court on the basis of diversity jurisdiction.

### Discussion

Corsica has asserted several theories of liability, including breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Corsica also claims negligence and strict liability in tort as bases for recovery. With the exception of its claims for damage to "other property," summary judgment is granted.

### A. Uniform Commercial Code

■ The first question is whether the Uniform Commercial Code ("UCC") applies to this dispute. In order for the UCC to apply, the transaction must be for a sale of goods. *City of Lennox v. Mitek Industries, Inc.,* 519 N.W.2d 330, 332 (S.D.1994). Goods are all things movable at the time the goods are identified to the contract for sale. *Id;* SDCL 57A-2-105(1). If goods and services are sold together, "[t]he test is what is the predominate purpose of the contract." *City*

*of Lennox,* 519 N.W.2d at 332 (citing *Jandreau v. Sheesley,* 324 N.W.2d 266 (S.D. 1982)). The UCC governs the dispute between these parties as the services performed were incidental to the goods provided by Behlen.

### B. Choice of Law

The parties do not agree on whether Nebraska or South Dakota law applies to the dispute. There is no true conflict as to the UCC statute of limitations as both states incorporate the statute of limitations found in 2-725 which provides, "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." SDCL 57A-2-725(1); Neb. Rev.Stat. U.C.C. § 2-725(1). The cause of action accrues when tender of delivery is made. SDCL 57A-2-725(2); Neb.Rev.Stat. U.C.C. § 2-725(2).

■ As to other matters, South Dakota law is most appropriate to apply to this dispute. First, the choice of law rules of the forum state would be applied by this Court. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, the Court must look to the conflict of law rules of South Dakota. Absent agreement between the parties, the South Dakota version of the UCC "applies to transactions bearing an appropriate relation to this state." SDCL 57A-1-105. In addition, South Dakota follows the Restatement (2d) of the Conflict of Laws. *Stockmen's Livestock Exchange v. Thompson,* 520 N.W.2d 255, 257 (S.D.1994) (citing *Chambers v. Dakotah Charter, Inc.,* 488 N.W.2d 63 (S.D.1992)). Section 191 of the Restatement provides:

> "The validity of a contract for the sale of an interest in a chattel and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless, with respect to the particular issue, some other

state has a more significant relationship...."

The building components were delivered in South Dakota. In addition, South Dakota had the most significant relationship to the transaction as the buyer was a South Dakota corporation, its principal place of business was in South Dakota, the goods were delivered in South Dakota to SBC, another South Dakota corporation, and the building was to be constructed in South Dakota. Also, Behlen developed a repair kit which it installed in South Dakota. Therefore, South Dakota law applies to this dispute.

## C. Disputed Issues of Fact

Corsica argues that the following issues of fact are material:

1. What are the terms and conditions of the contract governing the sale of the building?

2. Did Behlen sell the building to SBC who resold to Corsica or did Behlen sell the building to Corsica with SBC as its dealer?

Neither of these issues is material. First, the terms and conditions of the sale are not material as any contract or warranty claim is barred by the statute of limitations of either state. Second, because South Dakota law applies, it makes no difference whether SBC was a dealer for Behlen as the warranty ran to the ultimate consumer under the UCC. SDCL 57A–2–318.[1] By Corsica's own account, the building was completed by September, 1988 so any warranty claims are time-barred. Summary judgment is granted to the extent that Corsica relies on breach of warranty or breach of contract as a basis for recovery.

## D. Tort Causes of Action

■ As to Corsica's tort theories, the U.C.C. statute of limitations does not bar the claims because the cause of action does not accrue until the plaintiff is harmed by defendant. *See* Restatement (Second) of Torts § 899 cmt. c (1979). Generally, economic

losses are not recoverable in tort and recovery is limited to the UCC's commercial remedies. *City of Lennox v. Mitek Industries, Inc.*, 519 N.W.2d at 333. There are two exceptions to this rule. *Id.* The first exception is for personal injury. The second exception applies when the damage is to "other property" as opposed to the goods that were the basis of the bargain between the parties. *Id.* "Other property has been defined as damage to property collateral to the product itself." *Id.* Corsica asserts that this latter exception applies to the damages it sustained in this case.

■ In *City of Lennox*, the dispute developed after failed trusses caused damage to a building and its contents. *Id.* at 331. Expenses associated with that failure included removal of old insulation and sheet metal and repair of heating, plumbing and electrical systems in the building. These damages were consequential damages and not damages to "other property." *Id.* at 333–34. The South Dakota Court held that building constituted a whole product so that damage to the building was consequential damage, not damage to other property. *Id.* Damage to grain stored inside a defective building has also been found to be outside of the "other property" exception. *See, e.g., Agristor Leasing v. Spindler,* 656 F.Supp. 653, 658 (D.S.D.1987). Therefore, Corsica will not be allowed to pursue damages for the building or its contents.

■ Corsica has claimed Behlen is liable for damages to two vehicles which were parked next to the building were damaged. While *City of Lennox* notes an "other property" exception, it could be argued that the South Dakota Supreme Court might reject the claimed damages to "other property" in this case. In *City of Lennox*, South Dakota approves the rationale of *Hapka v. Paquin Farms,* 519 N.W.2d at 333 (citing 458 N.W.2d 683, 688 (Minn.1990)). The Hapkas sought damages resulting from diseased seed potatoes purchased from the defendants. 458

---

1. South Dakota law extends "A seller's warranty whether express or implied ... to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." SDCL 57A–

2–318. Nebraska law is different from South Dakota's on this point and would extend the warranty only to a "natural person who is in the family or household of his buyer...." Neb.Rev. Stat. U.C.C. § 2–318.

N.W.2d at 684. The contaminated potatoes infected seed potatoes purchased from other sources and caused the Hapkas to incur the expense of disinfecting their machinery and warehouses. *Id.* at 685. Clearly, the plaintiffs were seeking damages for "other property." The Minnesota court expressly rejected any prior implications that recovery might be allowed under these circumstances involving property damage arising from a commercial transaction. *Id.* at 688.

A recent Eighth Circuit opinion applying North Dakota law noted a "modern trend" to reject claims for damages, even damages to "other property," when "the damage was a foreseeable result of a defect at the time the parties contractually determined their respective exposure to risk, regardless of whether the damage was to the 'goods' themselves or to 'other property.'" *Dakota Gasification Co. v. Pascoe Building Systems,* 91 F.3d 1094, 1099 (8th Cir.1996). The dispute involved a roof collapse [2] at an oxygen plant which resulted from defective welds in structural components of the plant. *Id.* at 1096–97. The collapse caused significant property damage but no personal injuries. *Id.* at 1097.[3]

The court determined this modern trend to reject claims for foreseeable damages was consistent with North Dakota's treatment of the economic loss doctrine. *Id.*

> [I]t is difficult to imagine a scenario in which the natural consequence of an installed structural component's failure would be damage only to the structural component itself without any damage to the surrounding property. If such economic damage is a foreseeable consequence to the parties in a commercial relationship governed by the UCC, then it is a proper subject for negotiation and contract law, not for tort remedies.

*Id.* at 1100. The court concluded that the North Dakota Supreme Court would follow the modern trend and hold the economic loss doctrine precluded recovery in tort "for physical damage to other nearby property of commercial purchasers who could foresee such risks at the time of purchase." *Id.* at 1101. The court declined to consider whether the claimed damage to "other property" was in fact part of the same product as the claim was barred under North Dakota law in any event. *Id.* at 1099.

The U.S. Supreme Court addressed the application of tort theories in an admiralty case involving purely economic loss. *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). There was no allegation of damage to "other property." *Id.* at 866–67, 106 S.Ct. at 2300. The failure of the product is a matter of warranty law and not a mailer to be addressed under tort theories. *Id.* The Court discussed the majority approach of *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965).[4] The Court noted the minority approach which allows recovery for the product itself and criticized its failure to maintain the distinction between products liability and contract law. *East River,* 476 U.S. at 868–72, 106 S.Ct. at 2301–02. The Court also criticized a number of cases applying an intermediate approach which permit recovery under certain circumstances of dangerous conditions because the resulting loss to is purely economic regardless of whether the damage is sudden or gradual. *Id.* at 868–72, 106 S.Ct. at 2301–02. The Court adopted the *Seely* approach, holding "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. at 2302.

---

2. Although the described roof collapse was apparently a "sudden and calamitous" event, the court did not discuss this exception to the economic loss doctrine.

3. The *Dakota Gasification* case is factually similar to this case in that there was a sudden collapse of a building as a result of structural deficiencies which caused extensive property damage but no personal injuries. In addition, there were also early attempts to correct

known deficiencies within the warranty period in both cases. One difference would be that there does not appear to be any allegation that property outside the building was damaged in *Dakota Gasification* while the two vehicles were damaged outside the building in this case.

4. This is the approach adopted by the South Dakota Court. *See Agristor Leasing v. Spindler,* 656 F.Supp. at 655; *City of Lennox,* 519 N.W.2d at 333.

This Court declines to make a holding which would in effect modify the rule announced in *City of Lennox* and will deny summary judgment as to the two damaged vehicles. The Court declines Corsica's invitation to broaden the "other property" rule by holding Behlen exposed to liability for the full amount of Corsica's losses, including the loss of the building itself and damage to the corn stored inside, simply because there was damage to some "other property." The result would be a broadening of tort theories of recovery in a commercial setting which is contrary to the prevailing trend post-*East River* and contrary to established South Dakota law.

## E. Sudden and Calamitous Exception

 Some jurisdictions have allowed recovery for economic losses if the damage is caused by a sudden and calamitous event. *See, e.g., Capitol Fuels, Inc. v. Clark Equipment Co.*, 181 W.Va. 258, 382 S.E.2d 311 (1989); *Citizens Ins. Co. of America v. Proctor & Schwartz, Inc.*, 802 F.Supp. 133 (W.D.Mich.1992) (aff'd. on other grounds, 15 F.3d 558 (6th Cir.1994)) (rationale later rejected by *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 242 (6th Cir.1994)). This exception to the economic loss rule was also criticized by *East River*, 476 U.S. at 870–72, 106 S.Ct. at 2302. Given the majority view and the trend to reject the exception in jurisdictions where it has been urged, this Court believes the South Dakota Supreme Court would reject this attempt to broaden tort theories of recovery in a commercial dispute of this nature.

### *Conclusion*

The Court believes that the South Dakota Supreme Court would not recognize an exception for a sudden and calamitous event and would not allow recovery for all damages simply because there was damage to some "other property." Because the *City of Lennox* case distinguishes damage to the product and damage to other property, it is appropriate to deny summary judgment to the extent that the plaintiff seeks damages for the loss of the two vehicles. It seems unlikely that South Dakota would expand the exceptions to the economic loss doctrine given the prevailing trend to limit recovery in commercial settings, the denial of summary judgment as to the vehicles is, however, in keeping with the language adopted by the South Dakota Supreme Court in *City of Lennox*.

Now, therefore, upon the record herein,

IT IS ORDERED:

(1) Defendant Behlen Manufacturing Company's Motion for Summary Judgment is granted as to Plaintiff Corsica Cooperative Associations claims with the exception of Plaintiff's claims for the damage to two vehicles.