79 F.3d 272
 29 UCC Rep.Serv.2d 812
 VERMONT PLASTICS, INC., Plaintiff,
v.
BRINE, INC., Defendant.
VERMONT PLASTICS, INC., Third-Party Plaintiff-Appellant,
v.
NEW ENGLAND PLASTIC SERVICES COMPANY, Third-Party
Defendant/Fourth-Party Plaintiff,
Plastic Materials Company, Inc., Fourth-Party Defendant-Appellee.
 No. 435, Docket 95-7180.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 3, 1995.
Decided March 21, 1996.
 
 Christopher D. Roy, Downs Rachlin & Martin, Burlington, Vermont, for third-party plaintiff-appellant.
 Robert S. DiPalma, Paul, Frank & Collins, Inc., Burlington, Vermont, for fourth-party defendant-appellee.
 Before: MESKILL, ALTIMARI, and McLAUGHLIN, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 In this complex commercial litigation, the only matter before us is the third-party plaintiff-appellant Vermont Plastics, Inc.'s ("VPI's") appeal from a judgment of the United States District Court for the District of Vermont, Fred I. Parker, then-Chief Judge:[1] (1) granting fourth-party defendant-appellee Plastic Materials Company, Inc.'s ("PMC's") motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) on VPI's claim against PMC for negligent misrepresentation, and (2) denying VPI's motion to amend its third-party complaint to conform the pleadings to the evidence adduced at trial pursuant to Fed.R.Civ.P. 15(b), thereby reinstating its previously dismissed claim against PMC for breach of express warranty. Because the district court's determinations are fully supported by the record and are proper as a matter of law, we affirm the judgment of the district court.
 
 Background
 A. The Transactions At Issue
 
 2
 In 1986, VPI entered into a contract with Brine, Inc. ("Brine") whereby VPI agreed to manufacture plastic lacrosse stick heads ("heads") for Brine. The contract specified that VPI was to use only Zytel ST-801 Nylon ("ST-801") in making the heads, and use of any other plastic to make the heads required Brine's prior authorization and testing of the material. ST-801 is a brand of "super tough" nylon manufactured by E.I. Du Pont De NeMours & Co. ("DuPont") from generic 6/6 nylon resin. In the plastic industry, nylon is considered "super tough" if it exhibits certain minimum tensile and impact strengths measured on a standardized test of strength known as the "notched Izod." Besides meeting the minimum tensile and impact strengths for super tough nylon, ST-801 is configured to be flexible by dispersing specialized rubber particles throughout the nylon in small concentrations. The recipe for making ST-801 is Dupont's intellectual property. Dupont manufactures the ST-801 nylon into pellets, and then adds color and other additives to the pellets.
 
 
 3
 VPI commenced manufacturing heads for Brine, and in the fall of 1987 experienced delays in receiving colored ST-801 directly from DuPont. In response to the delay, it contacted New England Plastic Services ("NEPS"), a plastics distributor that acts as a jobber for various plastic product manufacturers and compounders. Compounders can also add color and additives to ST-801 purchased from Dupont, for distribution to manufacturing companies like VPI who mold the pellets into plastic products for sale to end users. According to NEPS, VPI stated that it had obtained a job requiring super tough nylon, and was having difficulty obtaining colored nylon in a timely fashion. VPI made no mention at the time that only ST-801 could be used to satisfy its super tough nylon needs. Accordingly, NEPS arranged for several sample shipments to VPI of a super tough nylon made by a compounder, PMC, designated as "6608."
 
 
 4
 By letter dated March 15, 1988, VPI sent NEPS lacrosse stick head samples requesting that they be matched in variously-colored ST-801. NEPS redacted the letter by removing any references to VPI, and forwarded it and the head samples to PMC. Based on PMC's previous representations to NEPS that 6608 was of the same or better quality as ST-801 and that the two nylons could be used interchangeably, NEPS believed that VPI's needs for a super tough nylon in making the heads could be met with PMC's 6608 nylon. Soon afterwards, NEPS gave a price quotation to VPI for the colored nylon, indicating in its letter that the quoted prices were for "ST-801/6608." Despite this ambiguous reference to the product, VPI officials thought "6608" was merely the compounder's code for the color it added to DuPont's ST-801, and believed that the price quotes were for ST-801. NEPS's only explanation for the reference to 6608 as "ST-801/6608" was that it was "a mistake."
 
 
 5
 VPI agreed to order the 6608 from NEPS, and started receiving shipments in 55 pound bags labelled "Nylon 6/6" and "Super Tough." Although the majority of shipments came from NEPS, some bags were shipped directly from PMC. According to VPI, because ST-801 was called "super tough" at VPI, VPI officials assumed that the shipments of bags labelled "Super Tough" contained ST-801.
 
 
 6
 Quality control problems soon arose with the 6608 nylon. According to VPI's production manager, heads that were made with the 6608 nylon failed impact strength tests more often than heads made with ST-801. In February 1989, VPI asked NEPS to conduct testing on the 6608 material it was getting. One month later, NEPS forwarded PMC's notched Izod testing results of the 6608 nylon to VPI. The stated subject of the memorandum accompanying the results was: "Physical Properties of 6/6/ Nylon," and the text read "[e]nclosed are the physical test dates on the re-made lots of Super Tough nylon." The testing data indicated that the material had the physical properties of super tough nylon. Despite the 6608 testing results, VPI continued to experience quality problems with the 6608. In September of 1989, at NEPS's request, PMC shipped an additive to VPI to be mixed into the 6608 that allegedly would increase the nylon's flexibility. The last shipment of 6608 that PMC made to VPI was in January, 1990. Some of this shipment was returned as unsatisfactory.
 
 
 7
 Eventually, Brine also experienced a high breakage rate on the lacrosse stick heads it sold that had been manufactured by VPI. It forwarded a sample of the heads to Dupont for testing, and was informed that the nylon used by VPI was not ST-801. When Brine confronted VPI with this information in May, 1991, VPI explained it did not know that 6608 was anything other than ST-801 until that time. Thereafter, Brine ceased doing business with VPI, including making further payments to VPI for back invoices of heads sent to Brine.
 
 B. The Proceedings Below
 1. Pre-Trial Rulings
 
 8
 VPI commenced an action in Vermont state court against Brine to recover the money it was owed in unpaid invoices. Brine removed the action to the federal district court on the basis of the parties' diversity of citizenship, and counterclaimed against VPI on a variety of legal theories, including breach of contract, breach of express warranty, and breach of implied warranty. It also asserted third-party claims against NEPS and PMC based on negligence, negligent misrepresentation, and breach of express and implied warranty. VPI, in its capacity as a counter-defendant, asserted identical thirdparty claims against NEPS and PMC. Finally, NEPS also asserted cross-claims against PMC, alleging negligence and negligent misrepresentation.
 
 
 9
 Prior to trial, NEPS and PMC moved for summary judgment to dismiss the third-party claims against them. The district court, in a thorough opinion familiarity with which is presumed, granted PMC's and NEPS's motions and dismissed Brine's third-party negligence, negligent misrepresentation and implied warranty claims. See Vermont Plastics, Inc. v. Brine, Inc., 824 F.Supp. 444, 447-454 (D.Vt.1993). The district court allowed Brine's breach of express warranty claim to go forward subject to renewal of NEPS's and PMC's motion upon the completion of discovery. See id. at 454-55. In a subsequent, unpublished opinion, the district court also granted PMC's and NEPS's motion to dismiss VPI's negligence claims against them, PMC's motion to dismiss VPI's breach of implied warranty claim, and PMC's motion to dismiss NEPS's cross-claim based on negligence. The district court also granted PMC's motion to dismiss VPI's breach of express warranty claim, on the ground that, despite having clear notice of the requirements of Rule 56(f) of the Federal Rules of Civil Procedure, VPI failed to comply with the requirements of that Rule in opposing the motion by not submitting an affidavit explaining the nature of any uncompleted discovery and how any undiscovered facts were reasonably expected to create a genuine issue of material fact. The district court did not, however, grant the motions to dismiss VPI's negligent misrepresentation claims.
 
 
 10
 2. Trial Rulings.
 
 
 11
 The trial commenced in early October, 1994. On the eve of trial, a partial settlement was reached among VPI, Brine, and NEPS. As part of the settlement agreement, Brine agreed not to execute judgment against VPI, and VPI agreed not to execute judgment against NEPS, unless sums were actually recovered from PMC in satisfaction of a judgment.
 
 
 12
 At the conclusion of VPI's case, PMC moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) on VPI's negligent misrepresentation claim against it. PMC principally argued that VPI could not have justifiably relied on PMC's representation that 6608 was "super tough" nylon and interchangeable with ST-801, because VPI's contract with Brine explicitly required that it could only use ST-801 to make the lacrosse stick heads. VPI, on the other hand, argued that its contractual duties under the Brine contract were immaterial; according to VPI, it justifiably relied on the representations because, had the 6608 been "super tough" as PMC represented, VPI would have substantially performed its contractual duties and would not be liable to Brine for breach of the contract. The district court denied PMC's motion.
 
 
 13
 At the close of all the evidence in the case, PMC renewed its motion for judgment as a matter of law on VPI's negligent misrepresentation claim. VPI also moved pursuant to Fed.R.Civ.P. 15(b) to amend its third-party complaint to conform with the evidence adduced at trial and reinstate its previously dismissed breach of express warranty claim against PMC. The district court granted PMC's motion for judgment as a matter of law, holding, among other things, that VPI could not have justifiably relied on the misrepresentations because it was "an unreasonable act on [VPI's] part to deliberately breach [its] contract." The district court also denied VPI's motion to conform the pleadings and reinstate its breach of express warranty claim, on the ground that the evidence adduced at trial did not show privity of contract between VPI and PMC as a matter of law.
 
 
 14
 Ultimately, the jury rendered a verdict in favor of Brine, and awarded it $831,832.00 in damages against VPI. The jury further determined that NEPS was not liable to VPI on either breach of express or implied warranty claim, and that PMC was not liable to NEPS on any theory of liability.
 
 
 15
 VPI now appeals, challenging the district court's rulings (1) granting PMC's motion for judgment as a matter of law on VPI's negligent misrepresentation claim, and (2) denying VPI's motion to amend the pleadings and reinstate its breach of express warranty claim.
 
 Discussion
 1. Negligent Misrepresentation
 
 16
 Judgment as a matter of law pursuant to Rule 50(a) is appropriate when "drawing all reasonable inferences regarding the weight of the evidence and the credibility of witnesses in favor of [the non-movant], a reasonable jury could only have found for the [movant]." In re Joint E. & S. Dist. Asbestos Litig., 52 F.3d 1124, 1131 (2d Cir.1995). In considering the evidence, the trial court may not weigh evidence, assess credibility, or substitute its opinion of the facts for that of the jury. See Milano v. Freed, 64 F.3d 91, 95 (2d Cir.1995); Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 60 (2d Cir.1993). In reviewing the district court's grant of a motion for judgment as a matter of law, "we apply the same standard as the district court." Joint E. & S. Dist. Asbestos Litig., 52 F.3d at 1131. "Thus, we must determine whether, drawing all reasonable inferences regarding the weight of the evidence and the credibility of witnesses in favor of [the] plaintiff, a reasonable jury could only have found for the defendants." Id.
 
 
 17
 The substantive issues in this diversity case are governed by Vermont law. Vermont follows the Restatement (Second) of Torts in setting forth the requirements for a claim of negligent misrepresentation. See Silva v. Stevens, 156 Vt. 94, 589 A.2d 852, 860 (1991). According to the Restatement,
 
 
 18
 [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 
 
 19
 Restatement (Second) of Torts § 552(1) (1977).
 
 
 20
 When, as here, the harm caused by the alleged negligent misrepresentation is merely pecuniary, liability is more restricted than what normally would be the case for physical injury. The rationale for such a restriction is "the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it." Restatement (Second) of Torts § 552 cmt a. As a result, liability for negligent misrepresentation in cases of pecuniary harm is limited to losses suffered:
 
 
 21
 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
 
 
 22
 (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
 
 
 23
 Restatement (Second) Torts § 552(2). Accord Behn v. Northeast Appraisal Co., 145 Vt. 101, 483 A.2d 604, 606 (1984) (following the Restatement).
 
 
 24
 Accordingly, judgment as a matter of law dismissing VPI's negligent misrepresentation claim would have been inappropriate if, drawing all reasonable inferences in favor of VPI, a reasonable jury could have found that (1) VPI was the person or one of the limited group of persons for whose benefit PMC supplied the representations concerning the 6608 nylon, or knew that NEPS intended to supply the representations to VPI, and (2) VPI justifiably relied on the representations in using the 6608.
 
 
 25
 Assuming for the moment without deciding the issue that the jury could reasonably have concluded from the evidence that the first prong of liability was met by VPI, we hold that the district court correctly entered judgment as a matter of law because VPI could not, as a matter of law, have justifiably relied on the alleged misrepresentations.
 
 
 26
 In the context of fraudulent or negligent misrepresentations, justification " 'does not mean that [the plaintiff's] conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases.' " Field v. Mans, --- U.S. ----, ----, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (quoting Restatement (Second) of Torts § 545A cmt. b); accord Silva, 589 A.2d at 860 (agreeing with Restatement that in negligent misrepresentation cases, "justifiable reliance" connotes an "objective standard"). See also W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 108 at 751 (5th ed. 1984) ("[T]he matter seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case...."). More particularly, the key factor in considering justifiability is whether "[t]he plaintiff's conduct ... [is] utterly unreasonable, in the light of the information apparent to him," as when the facts known to the plaintiff show the representations to be patently and obviously false. Id. at 750; see also Restatement (Second) of Torts § 545A cmt. b (analogizing plaintiff's conduct in such circumstances to assumption of risk).
 
 
 27
 On appeal PMC contends that VPI was not justified in relying on any of its representations concerning 6608, because VPI was obligated under its contract with Brine to only use ST-801. According to PMC, the source of VPI's damages under the Brine contract was not PMC's representations, but VPI's breach for failing to use ST-801. On the other hand, VPI stresses, as it did before the district court, that it justifiably relied on the representations, because (1) VPI would not have been in material breach of the contract had the representations that 6608 was "super tough" been true, and (2) VPI officials called ST-801 "super tough" in their daily operations, and accordingly thought the bags shipped from PMC marked "Super Tough" contained ST-801. We find VPI's contentions unavailing.
 
 
 28
 VPI's contract with Brine required that VPI only use ST-801 in making the lacrosse stick heads, unless it first obtained permission from Brine to use another product. By intentionally substituting another "super tough" nylon without Brine's consent, VPI would necessarily have been in material breach of the contract. Given VPI's contractual obligations, as well as its knowledge of the uniqueness of ST-801, no reasonable jury could find that VPI was justified in substituting any nylon on the representation that it was "super tough" or comparable to ST-801.
 
 
 29
 VPI's attempt to show that its reliance was justified by contending that as a matter of contract law it would not have been in material breach of the Brine contract in using 6608 had PMC's representations that 6608 was "super tough" been true, is without merit. VPI would not have substantially performed the material terms of its contract by intentionally substituting any "super tough" nylon for ST-801. ST-801 was a special kind of super tough nylon only made by Dupont, and was manufactured to be flexible by using a specialized rubber having a double bond fingerprint, which was dispersed in small concentrations throughout the nylon. Generic, super tough nylon did not have these characteristics. As a result, substitution of any "super tough" nylon for ST-801 was not a breach of "minor particulars" in the Brine contract that, under Vermont law, would excuse VPI's derogation from its contractual obligations and render its substitution substantial performance. See Vermont Structural Steel Corp. v. Brickman, 126 Vt. 520, 236 A.2d 658, 660 (1967).
 
 
 30
 Contrary to VPI's claims, the very case it relies upon to support its contention, Jacob & Youngs, Inc. v. Kent, 230 N.Y. 239, 129 N.E. 889 (1921), undermines its position. In that case the contract between the parties required that a house's plumbing be constructed of specialized standard pipe made in Reading. Due to inattention and oversight, the plumbing was constructed instead of specialized standard pipe made in Cohoes. The defendant-homeowner wanted the plaintiff-builder to demolish the plumbing and reconstruct it with the pipe specified in the contract. The builder refused, and sued on the balance of the contract. Writing for the majority, Judge Cardozo noted that the evidence showed that the differences between the two pipes were negligible. The pipes were indistinguishable, of the same quality, and had the same market value and cost; "they were, indeed, the same thing, though manufactured in another place." Id., 129 N.E. at 890. Accordingly, he held that where the "defect was insignificant in its relation to the project," the breach of the condition will not always be followed by a forfeiture, id., and that the proper remedy for the homeowner was the difference in value of the house, not the cost of replacing the pipe. Id. at 891. Of significance to the instant action is Judge Cardozo's recognition that the substitution of equivalents is not always insignificant, and that "[n]owhere will change be tolerated ... if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract. There is no general license to install whatever, in the builder's judgment, may be regarded as 'just as good.' " Id. (emphasis added, citations omitted).
 
 
 31
 In the same vein, VPI had no general license to substitute just any "super tough" nylon. Far from constituting an insignificant breach of the Brine contract, VPI's substitution of a non-ST-801 super tough nylon necessarily constitutes a material breach of its contract with Brine. Generic super tough nylon was neither the same product as ST-801 nor of the same quality. The difference between ST-801 and ordinary, super tough nylon is underscored by the fact that PMC had to ship an additive to VPI to mix into the 6608 in order to augment the product's flexibility, which still proved unsuccessful. Accordingly, even construing all of the facts in VPI's favor, under Vermont law VPI could not have substantially performed its contract with Brine by substituting a generic, super tough nylon for ST-801. Rather, it was in material breach of the contract and, as a result, was not justified in relying on PMC's representations, as a matter of law.
 
 
 32
 VPI attempts to circumvent the intentional nature of its decision to use a substitute super tough nylon by contending that, in fact, it did not knowingly substitute 6608 for ST-801. According to VPI, it thought it was actually receiving ST-801 because at VPI "super tough" nylon was synonymous with ST-801, and, therefore, it was justified in relying on the representations that 6608 was "super tough." We find the argument unconvincing.
 
 
 33
 VPI's contention would be tenable if there was evidence in the record that in the plastic manufacturing industry only ST-801, and no other nylon product, was synonymous with and referred to as "super tough." There is no such evidence in the record. To the contrary, the record indicates that it was VPI's practice to refer to ST-801 as "super tough," even though ST-801 was not the only super tough nylon. While there is evidence in the record that VPI received a price quotation for "ST-801/6608," that ambiguous statement was made by NEPS, not PMC. VPI's own unilateral mistake in assuming, in an industry producing multiple super tough nylons, that any nylon labelled super tough must be ST-801 cannot justify its reliance on PMC's alleged misrepresentations.
 
 
 34
 We hold, therefore, that in light of the requirements of the Brine contract, VPI's familiarity with ST-801, and PMC's lack of knowledge of VPI's operations and contractual obligations to Brine, VPI could not, as a matter of law, have justifiably relied on the alleged misrepresentations concerning 6608. Accordingly, the district court correctly entered judgment as a matter of law on VPI's negligent misrepresentation claim against PMC.
 
 2. VPI's Claim for Breach of Warranty
 
 35
 Fed.R.Civ.P. 15(b) allows parties to amend their pleadings to conform to the proof received into evidence at trial. The decision of whether to allow such an amendment is left to the discretion of the district court judge. See Grand Light & Supply Co., Inc. v. Honeywell, Inc., 771 F.2d 672, 680 (2d Cir.1985). We review the district court's decision for abuse of discretion. See Weissmann v. Freeman, 868 F.2d 1313, 1326 (2d Cir.), cert. denied, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989).
 
 
 36
 According to the Vermont Uniform Commercial Code ("Vermont U.C.C."), an express warranty is described as:
 
 
 37
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
 
 
 38
 (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
 
 
 39
 (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
 
 
 40
 Vt.Stat.Ann. tit. 9A, § 2-313 (1966).
 
 
 41
 While the statute anticipates a contractual relationship between the parties, the official comment to section 2-313 recognizes that in certain cases privity of contract is not necessary between the plaintiff and defendant to establish a claim for breach of express warranty:
 
 
 42
 Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of [Article 2] are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract.
 
 
 43
 Id. official cmt. 2. According to the comment, among the circumstances in which contractual privity is not required are (1) bailments for hire, and (2) situations covered by section 2-318 of the Vermont U.C.C., which provides that a seller's warranty extends to any natural person reasonably expected to use, consume or be affected by the goods, if the person is personally injured by breach of the warranty. See Vt.Stat.Ann. tit. 9A, § 2-318. Beyond these two circumstances, however, "the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise." Vt.Stat.Ann. tit. 9A, § 2-313 official cmt. 2.
 
 
 44
 After a thorough review of the case law, the district court below correctly concluded that "the Vermont Supreme Court has dispensed with privity when personal injury, property damage, or an express warranty made directly from the defendant to the plaintiff is present." Vermont Plastics, 824 F.Supp. at 453. Accordingly, under Vermont law, besides third-party personal injury and property damage cases resulting from the breach of an express warranty, privity of contract is not required to recover contractual damages for breach of an express warranty when the manufacturer expressly warrants its goods to the consumer and the ultimate consumer brings an action for breach of express warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312 (1994). See Gochey v. Bombardier, Inc., 153 Vt. 607, 572 A.2d 921, 924 (1990). While we recognize that outside the context of consumer claims brought under the Magnuson-Moss Warranty Act, the existence of an agency relationship between the remote seller and the seller of the product to the buyer may suffice to overcome lack of privity in a breach of warranty claim, see Costa v. Volkswagen of Am., 150 Vt. 213, 551 A.2d 1196, 1197-98 n. 1 (1988), overruled on other grounds, Gochey, 572 A.2d at 925 (overruling Costa "to the extent it is at odds with our decision today."), see also Vermont Plastics, 824 F.Supp. at 455 n. 14 (recognizing that Gochey cannot be read as overruling Costa on the issue of agency outside the context of consumer claims), we need not address that issue because it is not before us.
 
 
 45
 VPI contends on appeal, as it did before the district court at the close of the evidence, that the evidence at trial established three contacts between VPI and PMC that rise to the level of express warranties under section 2-313: (1) approximately 1300 bags of 6608 labelled "Super Tough" were delivered to VPI; (2) NEPS forwarded PMC's March, 1989 testing results of the 6608 to VPI; and (3) VPI received a sample of 6608 prior to its purchases in March, 1988, which was represented as "super tough" nylon. According to VPI, under the rule of Gochey such direct contacts between a manufacturer and ultimate purchaser regarding, among other things, descriptions of the goods give rise to express warranties in the absence of contractual privity. We find VPI's contentions to be without merit.
 
 
 46
 First, Gochey is inapposite because it concerns express warranties by the manufacturer or supplier to a consumer and contemplates breach of warranty claims brought under the Magnuson-Moss Warranty Act by consumers against warrantors of consumer goods. See Gochey, 572 A.2d at 924; 15 U.S.C. § 2301(5) (defining "warrantor"). The present case cannot be brought under the Magnuson-Moss Warranty Act, and therefore Gochey does not dispense with the need for privity. Indeed, as the district court correctly noted, the language in Gochey, that "when a manufacturer expressly warrants its goods, it, in effect, creates a direct contract with the ultimate buyer," Gochey, 572 A.2d at 924, suggests that the court remained concerned with maintaining some relationship in the context of a consumer purchase analogous to contractual privity between the manufacturer and consumer in order for the consumer to recover economic damages.
 
 
 47
 Second, the contacts relied upon by VPI--the sample of 6608, the bags of 6608 labelled "Super Tough", and the March, 1989 test results of the 6608 material--are insufficient to establish the privity of contract required under section 2-313. These contacts simply evince no bargain between PMC and VPI, nor does the record indicate that VPI entered into any bargain or contractual relationship for "super tough" nylon directly with PMC. VPI ordered the 6608 from NEPS and, except for the few shipments of 6608 sent directly to VPI, PMC's contacts with VPI were entirely through NEPS. Because the evidence adduced at trial was insufficient to establish privity of contract between PMC and VPI, the district court's denial of VPI's Rule 15(b) motion to reinstate its express warranty claim cannot be said to have been an abuse of discretion.
 
 Conclusion
 
 48
 For the foregoing reasons, the District Court's judgment (1) granting judgment as a matter of law in favor PMC and dismissing VPI's claim for negligent misrepresentation, and (2) denying VPI's motion to amend its complaint to conform the pleadings to the evidence adduced at trial and reinstate its previously dismissed claim against PMC for breach of express warranty, is affirmed.
 
 
 
 [1]
 Judge Parker became a member of the Second Circuit Court of Appeals on October 11, 1994