**Mark A. D'ANDREA, Plaintiff,**

v.

**Sameer RAFLA–DEMETRIOUS, Methodist Hospital of Brooklyn, The American Board of Radiology, Kenneth L. Krabbenhoft, in his capacities as Secretary and Executive Director of the American Board of Radiology, Defendants.**

No. 92–CV–2783 (JG).

United States District Court, E.D. New York.

Aug. 5, 1997.

Leonard Shapiro, New York City, for Plaintiff.

Mark J. Aaronson, Lee S. Seigel, Aaronson Rappaport Feinstein & Deutsch, New York City, for Defendants.

## MEMORANDUM AND ORDER

GLEESON, District Judge:

Mark A. D'Andrea, a former medical resident at Methodist Hospital of Brooklyn ("Methodist"),[1] brought this action on June 11, 1992, alleging that Methodist (1) breached its contract of employment with him; (2) interfered with his contract with the American Board of Radiology; (3) interfered with his prospective economic gain; (4) committed a prima facie tort; and (5) invaded D'Andrea's privacy in violation of New York Civil Rights Law §§ 50 and 51 by using a picture of him, without his consent, in a brochure used by Methodist to promote its medical internships and residencies. By memorandum and order dated March 25, 1996, I granted defendants' motion for summary judgment on all of plaintiff's claims except the invasion of privacy claim.[2]

On July 21, 1997, a jury was selected to hear plaintiff's remaining claim. Thereafter, I bifurcated the trial and directed the parties to present evidence on the issue of Methodist's liability. On July 23 and 24, plaintiff presented his case, which consisted of the testimony of Dr. Lynn Stiefel Hill, Dr. Sameer Rafla and plaintiff. Defendants then moved, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law on plaintiff's invasion of privacy claim. I granted the motion and stated that this opinion would follow.

### FACTS [3]

In 1989, Dr. Hill, Associate Director of Public Relations at Methodist,[4] took many pictures at Methodist Hospital for use in a brochure that it publishes to provide information about its internship and residency programs to prospective candidates. Hill visited all of the departments at the hospital and took photographs of department directors, residents, interns and patients. Plaintiff Mark D'Andrea, a resident in the Radiation Oncology department between 1986 and 1989, was one of the various residents whose photograph was taken by Hill. In their dealings, D'Andrea was cheerful and helpful and showed Hill around the department to facilitate the completion of her project. Although D'Andrea also consented to being photographed, he did not know that the photographs would be used in a brochure discussing Methodist's medical internships and residencies, and he informed Hill that he wished to be consulted should Methodist choose to publish any of the pictures.

Later that year, Methodist published a brochure that discussed its medical internships and residencies. The brochure was disseminated to fourth-year medical students and to medical school deans for distribution to students. For each of the departments— Anesthesiology, Internal Medicine, Pediatrics, Radiation Oncology, Surgery, and the Osteopathic Internship—the brochure identified the director by name and individual photograph. It also included text describing the requirements of the internship or residency program and photographs of unidentified residents, interns and patients in the department's offices. In the Radiation Oncology section of the 1989 brochure, there is a picture of D'Andrea and a Dr. Youssef, an attending physician, looking at and apparently discussing what appears to be a medical chart. Neither D'Andrea nor Youssef is identified or referred to in the text.

Although D'Andrea became aware in 1989 that his photograph was in the brochure, he did not, either at that time or any time prior to the initiation of this action in 1992, com-

---

1. The hospital is now known as New York Methodist Hospital.

2. Defendants did not move for summary judgment on the invasion of privacy claim except for the limited, unopposed argument that the claim was time-barred to the extent it was based on a brochure that was published in 1989. The summary judgment decision left undisturbed the invasion of privacy claim based on Methodist's 1992 brochure. Memorandum and Order dated March 25, 1996, at 30–32.

3. The facts are presented in the light most favorable to plaintiff. See Vermont Plastics, Inc. v. Brine, Inc., 79 F.3d 272, 277 (2d Cir.1996).

4. In 1992, Hill was promoted to the position of Director of Public Relations. Currently, she is the Vice President for Planning, Public Affairs and Development.

plain to anyone either orally or in writing about the use of this picture.

In 1992, Methodist once again published a brochure describing its internship and residency programs. It included the 1989 picture of D'Andrea and Youssef, as well as pictures of 41 other people. Again, only the photographs of department directors were identified, and the text of the brochure neither identified nor referenced D'Andrea or Youssef. The photograph of D'Andrea and Youssef occupied one-half of one page of the sixteen page document. The undisputed purpose of the brochure was to inform potential applicants about Methodist's internship and residency programs. The use of D'Andrea's picture did not convey any information about those programs.

## DISCUSSION

### A. *The Standard For Judgment As A Matter Of Law*

Rule 50(a) (1) of the Federal Rules of Civil Procedure provides:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Accordingly, judgment as a matter of law should only be granted if, while "drawing all reasonable inferences regarding the weight of the evidence and the credibility of witnesses in favor of [the non-movant], a reasonable jury could only have found for the [movant]." *Vermont Plastics, Inc. v. Brine, Inc.*, 79 F.3d 272, 277 (2d Cir.1996). In other words, a motion should be granted if a contrary verdict could only be based on "sheer surmise and conjecture." *Cruz v. Local Union Number 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1154 (2d Cir.1994).

### B. *The New York State Invasion of Privacy Statute*

Although New York does not recognize a common law right to privacy, New York Civil Rights Law §§ 50[5] and 51[6] provide a cause of action, including injunctive relief, for any person whose picture is used for advertising or trade purposes without his consent. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1049 (2d Cir.1995). The legislature crafted these sections "narrowly to encompass only the commercial use of an individual's name or likeness and no more." *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983); *Groden*, 61 F.3d at 1049 (invasion of privacy statute is "limited in scope"); *see Stephano v. News Group Publications, Inc.*, 64 N.Y.2d 174, 184, 485 N.Y.S.2d 220, 474 N.E.2d 580 (1984) (statute "should not be construed to apply to publications concerning newsworthy events or matters of public interest"). It thereby struck a balance between protecting the privacy of persons from commercial invasion and securing the "values our State and Federal Constitutions bespeak in the area of free speech and free press." *Arrington*, 55 N.Y.2d at 440, 449 N.Y.S.2d 941, 434 N.E.2d 1319.

---

**5.** New York Civil Rights Law § 50 provides:

> A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

**6.** New York Civil Rights Law § 51 provides, in relevant part:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided [in § 50] may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.

157

■ New York courts have refused to impose liability under §§ 50 and 51 for "incidental" uses of a person's name or photograph, so as not to impose an undue burden on publishers. *Netzer v. Continuity Graphic Associates, Inc.*, 963 F.Supp. 1308, 1326 (S.D.N.Y.1997). In order to establish liability, plaintiff must demonstrate a "direct and substantial connection between the appearance of the plaintiff's name or likeness and the main purpose and subject of the work." *Id.* (quoting *Preston v. Martin Bregman Productions, Inc.*, 765 F.Supp. 116, 120 (S.D.N.Y.1991)). In other words, "isolated" or "fleeting and incidental" uses of a person's name or image, even if unauthorized, are insufficient to establish an invasion of privacy claim. *University of Notre Dame Du Lac v. Twentieth Century–Fox*, 22 A.D.2d 452, 256 N.Y.S.2d 301, 304 (1st Dep't), *aff'd*, 15 N.Y.2d 940, 259 N.Y.S.2d 832, 207 N.E.2d 508 (1965) (two isolated references to plaintiff's name in a 143–page book do not offend the Civil Rights Law); *see Netzer*, 963 F.Supp. at 1326 ("isolated use of [plaintiff's] previous name and current surname" in a twenty-four page comic book is not actionable); *Man v. Warner Bros., Inc.*, 317 F.Supp. 50, 53 (S.D.N.Y. 1970) ("the incidental use of plaintiff's forty-five second performance in defendants' motion picture ... is surely *de minimus*" and is not actionable); *Booth v. Curtis Publishing Co.*, 15 A.D.2d 343, 223 N.Y.S.2d 737, 743 (1st Dep't), *aff'd*, 11 N.Y.2d 907, 228 N.Y.S.2d 468, 182 N.E.2d 812 (1962) (republication, for "sheer advertising and solicitation" purposes, of newsworthy photograph of an actress is "incidental advertising not conditionally prohibited by the statute"); *Stillman v. Paramount Pictures Corp.*, 2 A.D.2d 18, 153 N.Y.S.2d 190, 191 (1st Dep't 1956), *aff'd*, 5 N.Y.2d 994, 184 N.Y.S.2d 856, 157 N.E.2d 728 (1959) (§§ 50 and 51 "do not prohibit the incidental, momentary and isolated use" of a person's name in a fictional movie).

■ Here, the use of D'Andrea's photograph in the 1992 brochure was unquestionably incidental to the main purpose of the document, *i.e.*, to provide information about Methodist's programs to prospective interns and residents. His photograph did not provide any information about the curriculum or opportunities available at Methodist. To the contrary, the uncontradicted testimony of Dr. Hill was that D'Andrea's photograph was selected from among many by an independent brochure designer (who was not otherwise associated with the hospital) for the purpose of filling up space on a page. D'Andrea was one of 42 people included in such photographs.

In opposition to the Rule 50 motion, plaintiff argued that the photograph of him was not "incidental" to the brochure because (1) the brochure is in "hard copy," and is therefore "permanent;" and (2) some people may know and recognize him from the photograph. These arguments are wholly without merit. First, most of the cases cited above involve "hard copy" advertisements. *See, e.g., Groden v. Random House, Inc.*, 61 F.3d 1045, 1050 (2d Cir.1995). Indeed, there is no basis in logic for allowing a cause of action for incidental uses of photographs when the allegedly offending "advertisement" is in print, as opposed to some other medium. Second, D'Andrea's testimony that some of his colleagues in the radiation oncology field might recognize his photograph is irrelevant. Even if true, and even if those colleagues somehow perceived a connection between D'Andrea's likeness and the recruitment purpose of the 1992 brochure, the undisputed testimony is that the brochure was disseminated only to fourth-year medical students and their deans. Not even D'Andrea (who practices in Texas) suggests that his unidentified photographed would be recognized by that audience. Finally, even if it were, the mere fact that the subject of an advertisement might be recognizable does not preclude application of the incidental use doctrine. *See, e.g., Namath v. Sports Illustrated*, 48 A.D.2d 487, 371 N.Y.S.2d 10, 11 (1st Dep't 1975), *aff'd*, 39 N.Y.2d 897, 386 N.Y.S.2d 397, 352 N.E.2d 584 (1976) (republication, for "sheer advertising and solicitation" purposes, of newsworthy photograph of Joe Namath is "incidental advertising" not prohibited by the statute).

### CONCLUSION

The use of D'Andrea's photograph by Methodist Hospital could hardly have been more "incidental," both as a matter of New

158

York law and common sense. If D'Andrea has a cause of action here, then so do, for example, all of the students whose photographs happen to appear in their schools' admissions brochures. Presumably, most people in D'Andrea's situation would find some enjoyment, or at least amusement, in the discovery of their photograph. Whether they do or not, the use of a photograph in this manner does not offend New York law.

The real reason this misguided claim reached this courthouse was provided by D'Andrea himself. He consented to his photograph being taken. He sought no recourse for the use of his photograph in 1989. When he brought suit against Methodist on June 11, 1992, complaining bitterly about Dr. Rafla's reporting of D'Andrea's numerous absences to the American Board of Radiology, he did not assert a claim about the use of his photograph. Rather, D'Andrea testified that when he learned, after the original action was commenced, that the 1989 photograph happened to be used in the 1992 brochure, he told his lawyer to add a claim based on the photograph's republication to his pending lawsuit. That cynical approach to litigation, coupled with a lawyer's failure to properly screen his client's claims, produced a trial that never should have occurred.

Defendants' motion for judgment as a matter of law on plaintiff's invasion of privacy claim is granted. The Clerk of the Court is respectfully directed to enter judgment for the defendants.

So Ordered.